1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TANISHIA LASHE FINISTER,

               Plaintiff,

     v.

CAROLYN W. COLVIN,

              Defendant.

CASE NO. C16-0467JLR

ORDER AFFIRMING
DEFENDANT'S DECISION TO
DENY BENEFITS

## I.    INTRODUCTION

Plaintiff Tanishia Lashe Finister seeks review of the denial of her applications for disability insurance and supplemental security income ("SSI") benefits.  Ms. Finister contends that the Administrative Law Judge ("ALJ") erred in evaluating the medical evidence, evaluating Ms. Finister's testimony, and assessing Ms. Finister's residual functional capacity ("RFC") and finding her capable of performing work available in the national economy.  (Op. Br. (Dkt. # 11) at 1-2.)  Having considered the submissions of the parties, the relevant portions of the record, and the applicable law, the court AFFIRMS Defendant Commissioner Carolyn W. Colvin's final decision and DISMISSES the case with prejudice.

## II.   BACKGROUND

On March 11, 2013, Ms. Finister filed applications for disability insurance and SSI benefits, alleging disability as of December 31, 2008.  (Administrative Record ("AR") (Dkt. # 9) at 20.)  Ms. Finister's applications were denied initially and on reconsideration. (*Id.*)  After the ALJ conducted a hearing on May 13, 2014, the ALJ issued a decision finding Ms. Finister not disabled.  (AR at 20-30.)

The ALJ utilized the five-step disability evaluation process,[1] and the court summarizes the ALJ's findings as follows:

**Step one**:  Ms. Finister has not engaged in substantial gainful activity since December 31, 2008, the alleged onset date of her disability.

**Step two**:  Ms. Finister has the following severe impairments:  affective disorder, anxiety disorder, and personality disorder.

**Step three**:  Ms. Finister does not have an impairment or combination of impairments that meets or equals the requirements of a listed impairment.[2]

**RFC**:  Ms. Finister can perform a full range of work at all exertional levels except that she is limited to performing simple tasks away from the general public in a non-public setting.

**Step four**:  Ms. Finister is unable to perform any past relevant work.

**Step five**:  Because jobs exist in significant numbers in the national economy that Ms. Finister can perform, she is not disabled.

//

//

---

[1] 20 C.F.R. § 416.920.

[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

(*See* AR at 20-30.)  The Appeals Council denied Ms. George's request for review,

making the ALJ's decision the Commissioner's final decision.  (*See* AR at 1-6.)[3]

### III.   ANALYSIS

Pursuant to 42 U.S.C. § 405(g), this court may set aside the Commissioner's

denial of social security benefits if the ALJ's findings are based on legal error or not

supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d

1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

1999)).

### A.       Evaluation of the Medical Evidence

Ms. Finister argues that the ALJ erred in evaluating the medical evidence in the

record.  (*See* Op. Br. at 5-12.)  The ALJ is responsible for determining credibility and

resolving ambiguities and conflicts in the medical evidence.  *See Reddick v. Chater*, 157

F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in the record is not

conclusive, "questions of credibility and resolution of conflicts" are solely the functions

of the ALJ.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the

ALJ's conclusion must be upheld."  *Morgan v. Comm'r, Soc. Sec. Admin.*, 169 F.3d 595,

601 (9th Cir. 1999).

In resolving questions of credibility and conflicts in the evidence, an ALJ's

findings "must be supported by specific, cogent reasons."  *Reddick*, 157 F.3d at 725.  The

---

[3] The court omits the rest of the procedural history in this matter because it is not relevant
to the outcome of the case.

ALJ can satisfy this requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ may also draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

### 1.    David Widlan, Ph.D.

Ms. Finister argues that the ALJ erred by failing to fully incorporate or give a specific and legitimate reason to discount the opinion of David Widlan, Ph.D. (*See* Op. Br. at 5-9.) The court finds no harmful error.

Dr. Widlan examined Ms. Finister in July 2013 and diagnosed her with major depressive disorder, posttraumatic stress disorder, and borderline personality disorder. (*See* AR at 465.) In a medical source statement, Dr. Widlan wrote:

> The Mental Status Examination indicated deficits in memory, concentration, and social reasoning. In terms of the former she did OK on digit span tasks. She was not able to complete serial counting exercises. As such she is cognitively able to accept instruction from a supervisor for simple tasks only. In terms of social reasoning she responded poorly to a basic social scenario. She clearly has deficits in insight and also suffers

1
2

from Borderline Personality Disorder.  She has significant adaptive deficits, and these would impact persistence and consistency of performance.  She likely would also struggle to negotiate moderately novel social stressors.

3

(*Id.*)

4
5

The ALJ gave this opinion partial weight, agreeing that the objective evidence

6

warranted limiting Ms. Finister to simple tasks with social restrictions.  (*See* AR at 27.)

7

The ALJ then stated:

8
9
10

However, [Dr. Widlan's] assessment that the claimant has not sustained full-time employment is unsubstantiated, with the record indicating work performed at the substantial gainful activity level in the past.  Most of the assessment is based on the claimant's subjective complaints.  The undersigned takes note that the claimant has worked in spite of her depression symptoms, as pointed out by Dr. Widlan.

11

(*Id.* (internal citation omitted))

12
13

Ms. Finister argues that the ALJ erred by giving Dr. Widlan's opinion only partial

14

weight.  (*See* Op. Br. at 5-9.)  Ms. Finister argues that the step-five finding that she could

15

perform work available in the national economy is not supported by substantial evidence

16

as a result of this error.  (*See* Op. Br. at 9.)  However, Ms. Finister fails to identify any

17

specific functional limitations to which Dr. Widlan opined that are missing from the RFC

18

and therefore fails to establish that any alleged error in the ALJ's evaluation of Dr.

19

Widlan's opinion is harmful.[4]  *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012)

20
21
22
23

[4] Ms. Finister argues that the ALJ should have included limitations in the RFC to being off-task 10 percent of the workday, being late or leaving early three times a month, or being absent more than once a month, based on Dr. Widlan's opinion.  (*See* Op. Br. at 9.)  However, Dr. Widlan never opined to these specific limitations.  Though Dr. Widlan broadly stated that Ms. Finister's significant adaptive deficits "would impact persistence and consistency of performance," he ultimately opined that she was able to perform simple tasks.  (*See* AR at 465.)  The Ninth Circuit previously found no error where a claimant had complained that moderate

("The burden is on the party claiming error to demonstrate not only the error, but also that it affected his 'substantial rights,' which is to say, not merely his procedural rights.") (citing *Shinseki v. Sanders*, 556 U.S. 396, 407-09 (2009)). The ALJ agreed with the cognitive and social limitations to which Dr. Widlan opined and incorporated them into the RFC. (*See* AR at 24, 27.) That the ALJ took issue with Dr. Widlan's assessment of the level of Ms. Finister's past employment has no ultimate impact on whether the RFC is supported by substantial evidence. Therefore, Ms. Finister shows no harmful error here.

### 2.    Min Lee Booth, LMHC

Ms. Finister argues that the ALJ erred by failing to give a germane reason supported by substantial evidence to discount the opinion of mental health counselor Min Lee Booth, LMHC. (*See* Op. Br. at 9-12.) The court disagrees.

Mental health counselors are considered "other sources," and their opinions may be given less weight than those of "acceptable medical sources." *See* 20 C.F.R. § 416.913(d). The testimony of such "other sources" may be discounted if the ALJ "gives reasons germane to each [source] for doing so." *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citations omitted).

In April 2014, Ms. Booth examined Ms. Finister and prepared an intake

---

limitations in persistence and pace were not accommodated in the RFC, because the ALJ had included in the RFC the physician's opinion from the narrative portion of a limitation to simple tasks. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008). Here, the ALJ similarly incorporated into the RFC the concrete workplace limitation to simple tasks. (*See* AR at 24, 27.) This incorporation was consistent with the ALJ's treatment of the opinion of state medical consultant Matthew Comrie, Ph.D. Dr. Comrie reviewed Dr. Widlan's opinion, agreed that Ms. Finister had moderate limitations in concentration and persistence, and concluded that she could perform simple tasks with reasonable consistency. (*See* AR at 90-91.) The ALJ gave this opinion significant weight and based the RFC on the evidence accordingly. (*See* AR at 28.)

assessment.  (*See* AR at 545-58.)  In the assessment, Ms. Booth recorded Ms. Finister's

subjective complaints and then assigned a level of severity for several "emotional

criteria," including social withdrawal and response to stress.  (*See id*.)  Ms. Booth

assigned a rating of severe or marked impairment for several of these emotional criteria.

(*See* AR at 554.)  Ms. Finister argues that the ALJ erred by failing to address these

ratings.  (*See* Op. Br. at 9-12.)

The ALJ addressed Ms. Booth's opinion in the form of Ms. Booth's Global

Assessment of Functioning ("GAF") score.  (*See* AR at 26.)  Ms. Booth assessed Ms.

Finister with a GAF score of 41 (*see* AR at 556), which indicates serious symptoms or

serious impairment in social, occupational, or school functioning.  *See* DIAGNOSTIC AND

STATISTICAL MANUAL OF MENTAL DISORDERS (4th ed. 2000) at 34.  The ALJ found Ms.

Booth's score inconsistent with Ms. Finister's ability to complete activities of daily living

with few limitations.  (*See* AR at 26.)  Though the ALJ did not mention the emotional

criteria ratings in her analysis, the court infers that in discounting Ms. Booth's GAF

score, the ALJ simultaneously discounted the several marked or severe emotional criteria

ratings that served as the basis for the low GAF score.  *See Magallanes*, 881 F.2d at 755

(stating that the court may draw inferences from the ALJ's opinion); *see also Molina*, 674

F.3d at 1121 ("Even when an agency explains its decision with less than ideal clarity,

[courts] must uphold it if the agency's path may reasonably be discerned.").

Substantial evidence supports the ALJ's finding that Ms. Finister's daily activities

were inconsistent with Ms. Booth's finding of serious occupational impairment.  As

noted by the ALJ, Ms. Finister was able to get her children ready for school on time, take her baby to daycare, ride the bus to work, work as a janitor, prepare simple meals, perform light household chores, help her children with homework, and get her children ready for bed. (*See* AR at 26, 280-82.) These activities are inconsistent with Ms. Booth's GAF score and social criteria ratings, which indicated "obvious impairment" and "inadequate functioning" in areas such as self-care and sustained attention. (*See* AR at 556.) Therefore, the ALJ provided a germane reason supported by substantial evidence for discounting Ms. Booth's opinion.

### B.    Evaluation of Ms. Finister's Testimony

Ms. Finister argues that the ALJ erred in evaluating her subjective complaints. (*See* Op. Br. at 10-13.) The court disagrees.

Questions of credibility are solely within the responsibility of the ALJ. *See Sample*, 694 F.2d at 642. The court should not "second-guess" these credibility determinations. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester*, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. An ALJ's credibility determination remains valid even if some of the reasons for discrediting a

claimant's testimony should properly be discounted, as long as the determination is supported by substantial evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

Here, the ALJ discounted Ms. Finister's testimony for several reasons, including that Ms. Finister's condition improved with treatment. (*See* AR at 25.) An ALJ may discount a claimant's testimony on the basis of medical improvement. *See Morgan*, 169 F.3d at 599; *Tidwell*, 161 F.3d at 601. Substantial evidence supports the ALJ's finding that Ms. Finister showed significant improvement once she began taking medication. (*See, e.g.,* AR at 481 (report of feeling "more like herself" with improved mood), 496 (report of improved mood)). In fact, Ms. Finister reported that she quit taking her medication in August 2012 because she was "feeling great" and did not she think she needed the medication anymore. (*See* AR at 522.) When symptoms returned years later, she resumed taking medication. (*See id*.) Therefore, the ALJ provided a clear and convincing reason supported by substantial evidence to discount Ms. Finister's subjective complaints.

## C.    The RFC Assessment and Step-Five Finding

Ms. Finister argues that the RFC and step-five finding are not supported by substantial evidence due to the errors alleged above. (*See* Op. Br. at 16-17.) However, because the court finds that the ALJ did not err in evaluating the medical evidence or Ms. Finister's testimony, the RFC and step-five finding are supported by substantial evidence and not in error. *See infra* §§ III.A., B.

# IV.    CONCLUSION

For the foregoing reasons, the court AFFIRMS the Commissioner's final decision and DISMISSES this case with prejudice.

DATED this 24th day of October, 2016.


_____

JAMES L. ROBART
United States District Judge

ORDER - 10